## COMMONWEALTH v. CENTRAL TRANSP. CO.

APPEAL BY COMMONWEALTH FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 3, 1891—Decided June 12, 1891.

(*a*) A corporation, engaged in the business of manufacturing and leasing sleeping-cars, set apart as capital a fund accumulated from the rentals of its cars, etc., and subsequently, in good faith, in reduction of its capital stock paid therefrom to its stockholders twelve dollars per share, reducing the par value of each share by that amount:

1. Such division among the stockholders being an actual bona-fide reduction of capital stock, and neither made, declared, nor returned as a dividend, either of annual profits or of accumulated surplus, did not subject the capital stock to taxation, under § 4, act of June 7, 1879, P. L. 114, on the basis of a dividend of twelve dollars per share.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 16 May Term 1891, Sup. Ct.; court below, No. 215 March Term 1890, C. P.

On February 27, 1890, from an account stated by the auditor general and state treasurer against the Central Transportation Company, for tax on capital stock under § 4, act of June 7, 1879, P. L. 114, for the year ending the first Monday of November, 1887, the defendant company filed an appeal and specifications of objections.

The cause having been heard on submission to the court, without a jury, under the act of April 22, 1874, P. L. 109, the court, McPHERSON, J., filed the following decision:

### FINDINGS OF FACT.

This case was tried without a jury under the act of 1874. It is a re-settlement made by the auditor general, state treas-

urer, and attorney general, under the act of April 8, 1869, P. L. 19, on December 27, 1889, claiming tax on capital stock for the year ending the first Monday of November, 1887, with ten per cent penalty for failing to report a dividend alleged to have been made during that year. We find the facts to be as follows:

1. The defendant is a corporation of this state, chartered December 30, 1862, under the act of April 7, 1849, P. L. 563. Under subsequent legislation, its authorized capital stock was increased to $2,200,000. Owing however to the fraudulent over-issue of shares by one of its officers, for which the company was responsible, the number of its shares on the first Monday of November, 1886, was 46,949, with a par value of $50. Its chief office is in the city of Philadelphia.

2. The defendant's business was the manufacture of sleeping cars under certain patents owned by it, and the leasing of said cars to railway companies under written contracts. In furtherance thereof, its entire capital stock, on February 17, 1870, was invested in one hundred and nineteen cars, in seventeen patent-rights, and in contracts with sixteen railway companies. These patents and contracts would all expire before August 1, 1887.

3. On February 17, 1870, the defendant, by written contract with the Pullman's Palace-Car Company, transferred to the latter the said cars with their furniture, etc., and the said patents and contracts; in consideration whereof the defendant was to receive the annual sum of $264,000. The terms of this contract were somewhat altered by a second agreement made February 27, 1885. Both contracts are made a part of this finding.

4. For several years, this annual sum of $264,000 was paid to the defendant's stockholders as a dividend of twelve per cent, and tax was paid to the state upon this basis. [But in 1877 it was feared that the contract with the Pennsylvania Railroad Co., which was to expire in 1885, could not be renewed by Pullman's Palace-Car Co., or could not be renewed upon as favorable terms as were originally granted; and, as it was certain that the patents formerly owned by the defendant would soon expire, it became apparent to defendant's board of directors, that as the annual payments made by Pullman's

Palace-Car Co., represented capital as well as profits, it would be prudent to set apart a portion of these payments to represent the expiring patents and railway contracts, and thus to provide a fund to enable the defendant to resume its original operations, if this should become necessary. Otherwise, if the railway contracts could not be renewed at all, or could not be favorably renewed, the defendant's assets would be simply one hundred and nineteen cars, with no contracts under which they could be profitably used, and with no existing patents to protect them.] [3]

5. Accordingly, the defendant's board of directors in June, 1877, proposed to the stockholders, that four per cent of the annual payment made by the Pullman's Palace-Car Co., beginning in October of that year, should be set apart for three years, to enable the defendant to resume its original operations in the event above stated. This proposition was agreed to by the stockholders, and thereupon the defendant, on October 11, 1877, made an agreement with the Philadelphia Trust, Safe Deposit & Insurance Co., whereby the latter was to receive and hold in trust the securities bought with the said four per cent. This agreement also is made a part of this finding.

In April, 1880, the stockholders duly resolved to continue this accumulation until January 1, 1885, and in April, 1884, they resolved to continue it for a somewhat longer period.

6. [The securities thus accumulated and deposited with the trust company amounted, in 1887, to about $626,900 of United States bonds, worth about $713,000. We find as a fact that this sum was actually capital, and not annual profits or accumulated surplus over and above capital; and that it was regarded by the defendant as capital, and so accumulated.] [4]

7. In July, 1885, the directors resolved to accept the provisions of the constitution, and of the corporation, act of April 29, 1874, P. L. 73, and resolved also as follows:

" That in our opinion it is important to reduce the capital stock of the company by reducing the par value of each share, and to return to the stockholders by such reduction so much of the capital of the company as is held by or deposited with the Philadelphia Trust, Safe Deposit & Insurance Co., under its agreement with this company bearing date the eleventh day of October, 1877."

Decision of Court below.

This action was taken because it had then become manifest that the original business of the company could not be profitably resumed. Accordingly, a meeting of the stockholders was called for September 15, 1885, " for the purpose of deciding the following matter (we quote from the advertisement):

" 1. Shall this company accept the provisions of the constitution of Pennsylvania, and of the act of assembly of said commonwealth approved April 29, 1874, P. L. 73, and the various supplements thereto?

" 2. Shall this company reduce the par value of its capital stock ; and if it shall so reduce, to what amount shall the par value of each share be reduced?

" 3. Shall any portion, and if any, what portion of the reserve fund of the company accumulated under the provisions of an agreement with the Philadelphia Trust & Safe Deposit Co. bearing date October 17, 1877, now deposited with said last named company, be assigned and surrendered to the company, to·be subject to the control of the directors, and to be free and clear of all further control of said trust company?

" 4. Shall any, and if any, what portion of the said funds and property be paid over to the stockholders, after such surrender and assignment, in reduction of the par value of their shares?"

This meeting was held on September 15th, after publication of notice for sixty days, and the four propositions just quoted were carried.

In April, 1886, the directors resolved to withdraw the fund from the trust company, and thereupon " to pay twelve dollars per share to each and every shareholder on account of capital, and issue new stock at thirty-eight dollars per share per value, and a check for twelve dollars per share on return of old certificate." Owing to certain litigation with the Pullman's Palace-Car Co., however, this action could not then be taken.

8. On April 30, 1887, the matter was again brought forward and the directors resolved :

" That a special meeting of the stockholders of this company be called to meet at the chief office of the company at Association Hall, corner of Fifteenth and Chestnut streets in the city of Philadelphia, at eleven o'clock A. M., on Thursday the thirtieth day of June, 1887, for the purpose of determining

whether or not the company shall reduce its capital stock, and if at all, to what extent and in what manner."

Notice of the time, place and object of said meeting, was published once a week for sixty days prior to June 30th, in the Philadelphia Ledger and the Philadelphia Times.

The meeting was held upon the day named; the election was conducted by three stockholders as judges, duly appointed and qualified; and a resolution to reduce the par value of the company's shares from $50 to $38 was unanimously carried, 25,974 shares out of 46,949 having been voted in its favor, and none against it.

On July 21, 1887, a report of this election was filed in the office of the secretary of the commonwealth; and on August 8, 1887, a certificate by the defendant's treasurer, that the reduction thus authorized had been actually made, was also filed. This report and certificate are made a part of this finding.

9. On August 1, 1887, the bonds in the hands of the trust company having been withdrawn and converted into cash, the defendant's treasurer paid out of this fund to the stockholders twelve dollars per share, in accordance with the resolution adopted by the stockholders on June 30th. Each check contained this clause: " In reduction of the par value of the capital stock of the Central Transportation Company from $50 to $38 per share, by payment of $12 per share." When the check was paid, each certificate was stamped with the following sentence: " The par value of this stock is reduced to $38 per share by reason of a return of $12 per share, which has been returned to the holder."

[This payment of twelve dollars per share is the alleged dividend now in question; but we find as a fact, that it was a bona-fide return to the shareholders of that much capital, was intended to be a reduction of capital stock, and was made from a fund which represented capital. It was not a dividend, either of annual profits or accumulated surplus over and above capital.] [2]

10. On November 1, 1887, the defendant reported its capital stock to the auditor general, and stated therein that it had made no dividend during the year, and that the par value of each share was $38; adding, " Reduced to that amount June 30, 1887, as will appear from papers duly filed in the office of the

Decision of Court below.

secretary of the commonwealth." The stock was thereupon appraised at $1,197,200, and tax was duly paid upon this valuation.

11. Afterwards, and prior to this re-settlement, the commonwealth demanded tax upon the basis of a dividend of twelve dollars per share, but the defendant refused payment, and thereupon the present proceedings were begun.

CONCLUSIONS OF LAW.

This case presents one question only, viz., whether the sum of twelve dollars per share paid to the defendant's stockholders in 1887, was a dividend or a reduction of capital stock; and this is as much a question of fact as of law. We have already found as a fact that the transaction complained of, was not the declaration of a dividend, but a reduction of capital stock, and if this finding is supported by the evidence little more need be said.

It is not necessary to repeat the facts above set out. There is no contradiction in the testimony, and we do not see how it is possible to reach the conclusion that a dividend, in the sense given to that word by our statutes and decisions, was either declared or intended to be declared. [The fund in question plainly represented capital, was expressly and consciously accumulated as capital, was intended to be used as capital, and, when this intention was abandoned, was expressly divided as capital. It is true, that it was sometimes loosely spoken of as a "surplus," and the reduction as a "dividend," but the transaction is to be regarded as it really was, and not as it may have been incorrectly named.] [7] Its truth and substance were as we have found above, and further discussion would not make the subject plainer. Several opinions of the Supreme Court clearly and exhaustively describe what a dividend is, under our taxing system; and we can add nothing to what is there said. See Lehigh Crane Iron Co. v. Commonwealth, 55 Pa. 448 ; Phœnix Iron Co. v. Commonwealth, 59 Pa. 104; Commonwealth v. Railway Co., 74 Pa. 83, and Matson's Ford Bridge Co. v. Commonwealth, 117 Pa. 265.

If, indeed, this division had been returned to the state as a dividend, the defendant might have been estopped from afterwards denying it: Atlantic & O. Tel. Co. v. Commonwealth, 66 Pa. 57 ; but no such return was made. On the contrary,

Opinion of the Court.

the defendant's report stated the facts truly as we found them, and we know of no ground upon which the claim now made can be sustained.

[Our conclusion, therefore, is that the division of twelve dollars per share among the defendant's stockholders in 1887 was an actual, bona-fide reduction of capital stock, and was neither made, nor declared, nor returned as a dividend, either of annual profits or of accumulated surplus.   Consequently, it did not subject the defendant's capital stock to taxation under § 4 of the revenue act of June 7, 1879, P. L. 112, and the settlement now before us has no foundation.] [6]

We direct judgment to be entered for the defendant, if exceptions are not filed according to law.

—Exceptions to the foregoing decision filed by the commonwealth having been dismissed, and judgment entered, the commonwealth took this appeal, specifying that the court erred:

2–4. In the findings of fact embraced in [ ] [2 to 4]

6, 7. In the conclusions of law embraced in [ ] [6] [7]

*Mr. J. C. McAlarney* (with him *Mr. W. U. Hensel,* Attorney General, and *Mr. Jas. A. Stranahan,* Deputy Attorney General,) for the Commonwealth.

Counsel cited no authorities.

*Mr. M. E. Olmsted* (with him *Mr. John G. Johnson*), for the appellee.

That the findings of fact were not reviewable, further than the finding of a jury on writ of error, counsel cited: Commonwealth v. Hulings, 129 Pa. 317, 323.   That a reduction of capital stock was not a dividend: Commonwealth v. Railway Co., 74 Pa. 94, 99.

PER CURIAM:

Affirmed upon the opinion of the learned judge of the court below.